UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| DENE BROWN, | CASE NO. C14-0896 RSM |
| Plaintiff, | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| THE HOME DEPOT, | |
| Defendant. | |

## I.   INTRODUCTION

This matter comes before the Court on Defendant's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). Dkt. #15. Defendant, The Home Depot, argues that Plaintiff's claims should be dismissed as a matter of law because she admits that she was fired for testing positive for marijuana use in violation of Defendants' employment policies, and because she fails to make *prima facie* claims for retaliation, invasion of privacy, and wrongful termination in violation of a public policy. *Id.* Plaintiff opposes the motion, arguing that Defendant misconstrues the pleading requirements and asserting that she has properly pled her claims. Dkt. #18. For the reasons set forth below, the Court agrees in part with Plaintiff, and DENIES IN PART and GRANTS IN PART Defendant's motion.

///

///

ORDER
PAGE - 1

## II.   BACKGROUND

This case stems from allegations of wrongful termination. On October 15, 2012, Plaintiff began working for Home Depot in Covington, WA, as a flooring specialist. Dkt. #1 at ¶ 6. In December of 2012, she complained to Assistant Manager Jeff Stellick that the cabinet in the break room was unsafe because it was separating from the wall and hanging over the countertop. *Id.* at ¶ 7. It appears from the allegations in the Complaint that her complaint was ignored. *See id.* at ¶ 21.

On May 1, 2013, at approximately 11:30 a.m., a case of tile weighing about 70 pounds fell from a double stacked pallet onto Ms. Brown's right foot, breaking her big toe. *Id.* at ¶ 8. After leaving the sales floor, Ms. Brown informed Mr. Stellick, Human Resources Supervisor Jolene Sam, and Sales Supervisor Kaycee Hagan about the unsafely stacked pallets of tile, asserting that they caused her accident and needed to be properly secured. *Id.*

Shortly after the accident, Mr. Stellick informed Ms. Brown that she could seek medical treatment and that Home Depot would cover the cost if found to be at fault. Another employee, Rohan Jones, was present for this conversation. *Id.* at ¶ 9. During the conversation, Mr. Stellick used the term 'First and Final' a couple of times. *Id.* Ms. Brown asked him to explain what he was referring to. He apparently responded that it meant someone would be getting fired if the store was to be found at fault for the safety hazards that caused her injury. He said it would be considered "the first warning and final consequence." *Id.*

About an hour after the accident, Ms. Brown returned to her work area to clean out her desk before going home. *Id.* at ¶ 10. She noticed that the same pallets of tiles involved in her injury remained un-banded and stacked vertically, creating what she believed was a safety hazard. *Id.* About one hour later, she phoned the store and spoke with Sales Supervisor Hagan,

and informed Ms. Hagan that the pallets of tiles were still unsafe. Dkt. #1 at ¶ 11. Ms. Hagan apparently assured her that the pallets would be addressed immediately.

As a result of her injury, Ms. Brown's doctor recommended that Ms. Brown not return to work for two weeks. *Id.* at ¶ 12. On May 8, 2013, Ms. Brown stopped by the Home Depot to deliver the paperwork from her doctor.[1] According to Ms. Brown, Mr. Stellick refused to sign the Employer Copy of the Accident Report. *Id.* at ¶ 13.

On May 14, 2013, Mr. Stellick called Ms. Brown and asked her to come in and pick up some paperwork that he had forgotten to give to her previously. *Id.* at ¶ 14. He also requested that Ms. Brown submit to a drug test at a lab in Federal Way. *Id.* The next day, Ms. Brown met with Mr. Stellick to discuss the paperwork, and he requested again that she submit to a drug test. *Id.* at ¶ 15. Ms. Brown instead drove to her own doctor's office where she secured a note for another week off work, which she faxed to Home Depot. *Id.* She was not to return to work until May 22, 2013.

On the evening of May 16, 2013, Kate Maloney, a case manager for Liberty Mutual/Helmsmann Management, contacted Ms. Brown for an interview about her accident. *Id.* at ¶ 16. Ms. Maloney apparently told Ms. Brown that she (Maloney) was unaware that Ms. Brown had been injured and was not working. *Id.* Ms. Maloney informed Ms. Brown that a claim had been opened that day, and that the accident had been reported on May 1st. *Id.*

On May 17, 2013, Ms. Brown went to Home Depot and discovered that the pallets of tiles were still improperly stacked, so she took pictures of them. *Id.* at ¶ 17. On May 20, 2013, she filed a Washington Industrial Safety and Health Act ('WISHA') complaint with L&I regarding the tile pallets and the break room cabinet.

---

[1] She also apparently contacted Washington's Department of Labor and Industries ('L&I') to find out whether her claim had been opened. Dkt. #1 at ¶ 12.

ORDER
PAGE - 3

On May 21, 2013, Ms. Brown received a work release note from her doctor, which recommended that she return to work on light duty. *Id.* at ¶ 19. She faxed the paperwork to Home Depot, and asked Ms. Sam to call her to discuss her light duty assignment. Dkt. #1 at ¶ 19. That afternoon she completed her "post-accident" drug test. *Id.*

On May 22, 2013, Mr. Stellick informed Ms. Brown that she had failed her drug test. *Id.* at ¶ 20.

On May 28, 2013, L&I informed Home Depot that it had received a WISHA complaint regarding its tile pallets and the break room cabinet. *Id.* at ¶ 21. The next day, Home Depot posted the letter and responded that the problems had been corrected. *Id.* at ¶ 22.

On May 29, 2013, Mr. Stellick informed Ms. Brown that she needed to come in and discuss her test results. *Id.* at ¶ 23. On May 30, 2013, Ms. Brown met with Mr. Stellick and the Department Supervisor. Mr. Stellick informed Ms. Brown that she would be terminated immediately as a result of the failed drug test. *Id.* at ¶ 24. Mr. Stellick then read the termination letter aloud and asked Ms. Brown to sign it. *Id.* He also informed Ms. Brown that as a result of her WISHA complaint, it was now corporate policy to stack tiles horizontally and not vertically. *Id.* He then escorted Ms. Brown to her locker and off the premises. *Id.*

The instant action followed. In her Complaint, Ms. Brown alleges: 1) Discrimination Based on WISHA Complaint; 2) Violation of Public Policy; and 3) Invasion of Privacy. Dkt. #1 at ¶¶ 25-34. Home Depot seeks dismissal of all of these claims. Dkt. #15.

### III.   DISCUSSION

**A. Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed . . . but early enough not to delay trial." Fed. R. Civ. P.

ORDER
PAGE - 4

12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n.1 (9th Cir. 2008).

In deciding a 12(b)(6) or 12(c) motion, this Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court must construe the complaint in the light most favorable to the Plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the Complaint. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when Plaintiff "pleads factual content that allows the court to draw the

ORDER
PAGE - 5

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiff's claims must be dismissed. *Twombly*, 550 U.S. at 570.

### B. Extrinsic Documents

The Court first addresses Defendant's request that it consider several documents attached in support of the instant motion. Specifically, Home Depot asks the Court to consider Ms. Brown's drug test results and termination letter on the basis that they have been incorporated by reference in Ms. Brown's Complaint, and also asks the Court to take judicial notice of briefing in a case in the Eastern District of California which allegedly confirms that the government considers Marijuana to be Schedule I narcotic. Dkt. #15 at 4. Home Depot also asks the Court to review its employment policies, and particularly the policy regarding failed drug tests. *Id.*

The Court denies Defendant's request that it consider the employment policy regarding drug tests and the briefing from the Eastern District of Washington. The employment policy has not been incorporated by reference in the Complaint, and it is not necessary for the Court to rely on the California briefing in this matter. The Court will, however, take notice of Ms. Brown's test results and termination letter, as it finds those documents were incorporated by reference in the Complaint. However, the Court's judicial notice is limited to recognizing that the documents exist, but not for the truth of the matters set forth therein, as those factual matters remain contested. *See NuCal Foods, Inc. v. Quality Egg LLC*, 887 F.Supp.2d 977, 984-85 (E.D. Cal. 2012) ("While the court cannot accept the veracity of the representations made in the documents, it may properly take judicial notice of the existence of those documents."). Accordingly, this motion proceeds under Federal Rule of Civil Procedure 12(c), as further discussed herein.

ORDER
PAGE - 6

**C. Alleged Failure to Meet Pleading Standard**

Home Depot argues that Ms. Brown's claims should be dismissed because she fails to meet the required pleading standards for her claims. The Court addresses each claim in turn, below.[2]

*1. Claim 1*

Plaintiff's First Claim for Relief alleges that she was terminated in retaliation for making a WISHA complaint against Home Depot. Dkt. #1 at ¶¶ 25-27. The Court presumes this cause of action has been brought under Washington's Law Against Discrimination ('WLAD'), RCW 49.60, *et seq*. To establish a *prima facie* case of retaliation for a protected activity under the WLAD, an employee must show that (1) she engaged in a statutorily protected activity, (2) the employer took an adverse employment action against the employee, and (3) there is a causal connection between the employee's activity and the employer's adverse action. *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005); *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446, 334 P.3d 541 (2014). If the employee establishes a *prima facie* case, then the employer may rebut the claim by presenting evidence of a legitimate nondiscriminatory reason for the adverse action. *Estevez*, 129 Wn. App. at 797-98; *Scrivener*, 181 Wn.2d at 446. The burden then shifts back to the employee to show that the employer's reason is pretext. *Estevez*, 129 Wn. App. at 798; *Scrivener*, 181 Wn.2d at 446. Once 'the record contains *reasonable but competing* inferences of *both* discrimination *and* nondiscrimination, 'it is the jury's task to choose between such inferences."*Estevez*, 129 Wn. App. at 798 (quoting *Hill v. BTCI Income Fund-I*, 144 Wn.2d 172, 186, 23 P.3d 440 (2001)) (other citations omitted).

---

[2] In her Complaint, Plaintiff has failed to identify any specific statutes, codes or regulations, either state or federal, that Defendant has allegedly violated. *See* Dkt. #1 at ¶¶ 25-34. However, the Court acknowledges that this suit has been brought in this Court on the basis of diversity jurisdiction, and recognizes that Ms. Brown's claims appear to be based on Washington state law. Accordingly, the Court addresses these claims only under state law.

ORDER
PAGE - 7

In this case, Defendant concedes for purposes of this motion that Plaintiff has established the first two elements of her *prima facie* case–she made a WISHA complaint and she was terminated from her employment with Home Depot. Dkt. #15 at 5. However, Defendant argues that she cannot meet the third element, causation, because she admits she was terminated for testing positive for marijuana, she cannot demonstrate that at the time she was terminated she met all of her legitimate job expectations and temporal proximity alone is insufficient to establish causation. *Id.* at 5-6. The Court disagrees with Defendant.

First, Plaintiff has merely conceded that the stated reason for her termination was that she tested positive for marijuana, but alleges that the reason is pretext for retaliation. *See* Dkts. #1 at ¶ ¶ 24, 26 and 30 and #18 at 11. Second, Plaintiff has alleged, and Defendant does not deny, that: 1) Home Depot received the results of her test on May 22, 2013; 2) Home Depot received a Notice on May 28, 2013, that Plaintiff had filed a WISHA complaint; and 3) Home Depot fired Plaintiff two days later on May 30, 2014. The temporal proximity, along with Plaintiff's engagement in a statutorily protected activity, which this Court must accept as true on this motion, is enough to raise factual questions about Home Depot's motivation for Ms. Brown's termination.

To show a causal connection, the employee must specifically show that the employer's motivation for the discharge was the employee's exercise or intent to exercise the protected rights. *Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118 Wn.2d 46, 68, 821 P.2d 18 (1991). Plaintiff need not establish that retaliation for protected activity was the sole reason for the adverse employment actions. Instead, she must show only that retaliation was a substantial motivating factor. *Allison v. Housing Auth.*, 118 Wn.2d 79, 95-96, 821 P.2d 34 (1991). The Court acknowledges that Plaintiff appears to have failed a drug test and that it may be a

ORDER
PAGE - 8

legitimate basis for her termination. Indeed, on a motion for summary judgment, supported with Declarations, deposition testimony and/or other evidence, the outcome may be different. However, at this stage of the proceedings, the Court finds that Plaintiff has adequately alleged her statutory claim and questions of fact preclude dismissal as a matter of law.

   2. *Claim 2*

The Court next turns to Plaintiff's claim for Wrongful Termination in Violation of Public Policy. To prevail on such a claim, a plaintiff must show: (1) the existence of a "clear public policy" ("clarity" element), (2) whether discouraging the conduct in which the employee engaged would jeopardize the public policy ("jeopardy" element), (3) whether the conduct caused the discharge ("causation" element), and (4) whether the employer offers an overriding justification for the discharge ("absence of justification" element). *Piel v. City of Fed. Way*, 177 Wn. 2d 604, 610, 306 P.3d 879 (2013) (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wn. 2d 931, 941, 913 P.2d 377 (1996)). Plaintiff appears to allege two bases for this claim:

> 29. Defendant's conduct in discharging plaintiff violated public policy in that the discharge was an invasion of privacy as plaintiff was discharged for purely private conduct having nothing to do with her employment. The discharge violated Washington's constitutional right to privacy.
>
> 30. Defendant's conduct in discharging plaintiff violated public policy in that the discharge was in retaliation for becoming injured on the job, filing a worker's compensation claim, and reporting safety hazards to WISHA.

Dkt. #1 at ¶¶ 29 and 30.

To the extent that Defendant seeks to dismiss this claim based on Plaintiff's allegations of retaliation, the Court denies the motion for the same reasons set forth above. However, with respect to the wrongful discharge based on invasion of privacy, the Court dismisses that portion of the claim. Plaintiff asserts that in this claim, she is not asserting a right to smoke marijuana, rather, she is asserting that she has a right not to be subjected to a random drug test for it while

ORDER
PAGE - 9

she is not working and without a legitimate basis for it. Dkt. #18 at 16. Setting aside that Plaintiff did not actually plead such a cause of action, Plaintiff's claim fails because she fails to demonstrate a clear public policy.

The public policy exception to the at-will doctrine of employment has been recognized by Washington courts in four situations: (1) employee fired for refusing to commit illegal act, (2) employee fired for performing public duty or obligation such as jury duty, (3) employee fired for exercising a legal right or privilege, or (4) employee fired in retaliation for reporting employer misconduct. *Boring v. Alaska Airlines*, 123 Wn. App. 187, 195, 97 P.3d 51, 54 (Div. I 2004) (citations omitted). It is not clear which of these categories is being asserted by Plaintiff, but the Court can rule out one and two, and the Court has already discussed category four. Thus, the Court may only assume that Plaintiff bases this portion of her claim on category three. However, she fails to provide any case law demonstrating that there is a clear public policy allowing her "purely private conduct" upon which she may base a wrongful discharge claim. Moreover, Washington has rejected an asserted broad public policy that would prevent employers from discharging an employee because she uses marijuana. *See Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC*, 171 Wn.2d 736, 757, 257 P.3d 586 (2011)[3]; *Roe v. Quality Trans. Servs.*, 67 Wn. App. 604, 608-09, 838 P.2d 128 (Div. III 1992) (affirming dismissal of wrongful discharge in violation of public policy claim by employee who refused to take an employer-mandated drug test and rejecting argument that such a test would violate her right to privacy under the Washington State Constitution). Accordingly, the Court dismisses her wrongful discharge claim to the extent that she bases it on invasion of privacy.

---

[3] While the *Roe* court was examining the use of medical marijuana under Washington's Medical Use of Marijuana Act ("MUMA"), RCW 69.51, *et seq.*, Plaintiff fails to establish that anything under Washington's Recreational Marijuana statute, RCW 69.50, *et seq.*, is any different or establishes any clear public policy to support her claim.

ORDER
PAGE - 10

*3. Claim 3*

Finally, the Court turns to Plaintiff's Invasion of Privacy claim. Plaintiff asserts that the requirement that she be drug tested in and of itself violates her right to privacy. The Court disagrees. As discussed above, Plaintiff fails to provide any law in support of her claim, and the Washington Court of Appeals has already rejected arguments that the Washington Constitution creates privacy rights with respect to employer drug tests. *See Roe v. Quality Trans. Servs.*, 67 Wn. App. at 608-09. As a result, the Court dismisses Plaintiff's invasion of privacy claim.

**D. Leave to Amend**

In the event a court finds that dismissal is warranted, it should grant the plaintiff leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In this case, the Court finds amendment futile with respect to Plaintiff's invasion of privacy claims.

### IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby FINDS and ORDERS:

1. Defendants' Motion for Judgment on the Pleadings (Dkt. #15) is GRANTED IN PART and DENIED IN PART as follows.

    a. Plaintiff's Claim 1 shall proceed.

    b. To the extent it is based on retaliation, Plaintiff's Claim 2 shall proceed, however, to the extent it is based on invasion of privacy Plaintiff's Claim 2 is dismissed.

    c. Plaintiff's Claim 3 is dismissed.

DATED this 5th day of February 2015.

ORDER
PAGE - 11

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 12